UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFF HOBBS; ALFRED DOUGLAS STONE; on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

META PLATFORMS, INC.; MARK ZUCKERBERG; GUILLAUME LAMPLE; JOELLE PINEAU; JOHN DOES 1-100,

*Defendants*.

Case No. 1:26-cv-04314-PAE

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARK ZUCKERBERG'S MOTION TO DISMISS**

JUSTIN V. SHUR
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
justin.shur@lskllp.com

August 26, 2026

*Attorney for Defendant*
MARK ZUCKERBERG

**Table of Contents**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 1

III. LEGAL STANDARD ........ 2

A. Fed. R. Civ. P. 12(b)(2) ........ 2

B. Fed. R. Civ. P. 12(b)(6) ........ 3

IV. ARGUMENT ........ 3

A. Mr. Zuckerberg Is Not Subject to Personal Jurisdiction. ........ 3

1. Mr. Zuckerberg Is Not Subject to General Jurisdiction. ........ 3

2. Mr. Zuckerberg Is Not Subject to Specific Jurisdiction. ........ 4

a. Section 302(a)(1) Does Not Reach Mr. Zuckerberg. ........ 4

b. Section 302(a)(3) Does Not Reach Mr. Zuckerberg. ........ 7

B. Exercising Jurisdiction Over Mr. Zuckerberg Would Violate Due Process. ........ 8

C. The Complaint Fails to State a Claim for Direct Copyright Infringement Against Mr. Zuckerberg (Counts I and II). ........ 9

1. The Complaint identifies other individuals as the actual infringers. ........ 10

2. The Complaint's factual allegations describe corporate direction, not personal infringement. ........ 10

3. The Complaint's most detailed allegation as to Mr. Zuckerberg actually undercuts Plaintiffs' theory. ........ 11

4. The Complaint's conclusory labels cannot substitute for factual allegations. ........ 12

D. Plaintiffs Do Not Plausibly Allege Contributory Infringement by Mr. Zuckerberg (Count III). ........ 13

1. The Complaint Does Not Plausibly Allege Inducement Under *Cox* ........ 13

2. The Complaint Does Not Plausibly Allege Material Contribution. ........ 14

E. The DMCA Claim (Count IV) Should Be Dismissed As To Mr. Zuckerberg. ........ 15

F. The New York Common-Law Claims (Counts V–VII) are Preempted and Independently Fail. ........ 17

1. Unfair Competition (Count V) ........ 17

2. Conversion (Count VI) ........ 19

3. Unjust Enrichment (Count VII) ........ 20

V. CONCLUSION ........ 21

## Table of Authorities

### Cases

*Abdin v. CBS Broad., Inc.*,
971 F.3d 57 (2d Cir. 2020) ........ 9

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309 (2d Cir. 2022) ........ 9, 12, 13

*Adamou v. Cnty. of Spotsylvania, Virginia*,
2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ........ 4, 5, 7

*Arista Recs. LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........ 9

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3, 12, 14

*Austin v. Gould*,
168 A.D.3d 626 (1st Dep't 2019) ........ 19

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ........ 3

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006) ........ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ........ 4

*Blockchain Luxembourg S.A. v. Paymium, SAS*,
2019 WL 4199902 (S.D.N.Y. Aug. 7, 2019) ........ 7

*Branham v. ISI Alarms, Inc.*,
2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ........ 6

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) ........ 17, 20

*Brought to Life Music, Inc. v. MCA Recs., Inc.*,
2003 WL 296561 (S.D.N.Y. Feb. 11, 2003) ........ 13

*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019) ........................................................................ 3

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008) ........................................................................ 9, 12

*Chevrestt v. Am. Media, Inc.*,
204 F. Supp. 3d 629 (S.D.N.Y. 2016) ........................................................................ 15, 16

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992) ........................................................................ 17, 18

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012) ........................................................................ 20

*Cox Commc'ns, Inc. v. Sony Music Entm't.,*
146 S. Ct. 959 (2026) ........................................................................ 13, 14

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.,*
763 F. Supp. 3d 618 (S.D.N.Y. 2025) ........................................................................ 8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........................................................................ 3

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010) ........................................................................ 4

*Ditkoff v. Wolff*,
2025 WL 919635 (S.D.N.Y. Mar. 26, 2025) ........................................................................ 3

*Duravest, Inc. v. Viscardi, A.G.*,
581 F. Supp. 2d 628 (S.D.N.Y. 2008) ........................................................................ 5

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016) ........................................................................ 14, 15

*Faulkner v. Nat'l Geographic Soc'y*,
211 F. Supp. 2d 450 (S.D.N.Y. 2002) ........................................................................ 20

*Forties B LLC v. Am. W. Satellite, Inc.*,
725 F. Supp. 2d 428 (S.D.N.Y. 2010) ........................................................................ 13, 14

*Genius Media Grp. Inc. v. Google LLC*,
2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020) ........................................................................ 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 3

*Gottlieb v. Cnty. of Orange*,
84 F.3d 511 (2d Cir. 1996). .......... 2

*Group One Ltd. v. GTE GmbH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) .......... 7

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
723 F.2d 195 (2d Cir. 1983) .......... 19

*Hunley v. Instagram, LLC*,
73 F.4th 1060 (9th Cir. 2023) .......... 9

*In re OpenAI, Inc. Copyright Infringement Litig.*,
2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) .......... 20

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945) .......... 8

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y. 1998) .......... 6

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) .......... 20

*Kid Car NY, LLC v. Kidmoto Techs. LLC*,
518 F. Supp. 3d 740 (S.D.N.Y. 2021) .......... 18

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) .......... 17

*Kreutter v. McFadden Oil Corp,*
71 N.Y. 2d 460 (1988) .......... 5, 6

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020) .......... 15

*Matthew Bender & Co. v. West Pub. Co.*,
158 F.3d 693 (2d Cir. 1998) .......... 13

*McGucken v. Shutterstock, Inc.*,
166 F.4th 361 (2d Cir. 2026) .......... 16

*Michael Grecco Prods., v. Valuewalk, LLC*,
345 F. Supp. 3d 482 (S.D.N.Y. 2018) .......... 15

*National Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997) .......... 18

*New London Assocs. LLC v. Kinetic Social LLC*,
384 F. Supp. 3d 392 (S.D.N.Y. 2019) .......... 19

*Nicosia v. Amazon.com Inc.*,
834 F.3d 220 (2d Cir. 2016) .......... 3

*Ontel Prods., Inc. v. Project Strategies Corp.*,
899 F. Supp. 1144 (S.D.N.Y. 1995) .......... 5

*Retail Software Servs., Inc. v. Lashlee*,
854 F.2d 18 (2d Cir. 1988) .......... 6

*Sidney Frank Importing Co. v. Beam Inc.*,
998 F. Supp. 2d 193 (S.D.N.Y. 2014) .......... 18

*Smith v. BarnesandNoble.com, LLC*,
143 F. Supp. 3d 115 (S.D.N.Y. 2015) .......... 9

*Softel, Inc. v. Dragon Med & Sci. Commc'ns, Inc.*,
118 F.3d 955 (2d Cir. 1997) .......... 15

*Stanacard, LLC v. Rubard, LLC*,
2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) .......... 15, 19

*Telecom Int'l Am., Ltd. v. AT & T Corp.*,
280 F.3d 175 (2d Cir. 2001) .......... 19

*Thackurdeen v. Duke Univ.*,
130 F. Supp. 3d 792 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016) .......... 2, 4

*UMG Recording, Inc. v. Escape Media Grp., Inc.*,
2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014) .......... 10

*Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49 (2d Cir. 2019) .......... 3

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
124 F. Supp. 3d 301 (S.D.N.Y. 2015) .......... 6

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 8

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001) ........ 2

*White v. DistroKid*,
738 F. Supp. 3d 387 (S.D.N.Y. 2024) ........ 13

*Wolo Mfg. Corp. v. ABC Corp.*,
349 F. Supp. 3d 176 (E.D.N.Y. 2018) ........ 6, 7, 18

**Statutes**

17 U.S.C. § 1202 ........ 15, 16
N.Y. CPLR § 302 ........ 4, 7, 8

**Rules**

Fed. R. Civ. P. 12(b)(2) ........ 2, 3
Fed. R. Civ. P. 12(b)(6) ........ 3

## I. INTRODUCTION

Plaintiffs seek to hold Mr. Zuckerberg personally liable for infringement that the Complaint does not allege he committed, in a forum the Complaint does not allege he acted in. Their theory is that corporate strategic oversight—receiving escalations and setting policy from California—is the equivalent of personally downloading copyrighted works and personally directing conduct at New York. It is not. The Complaint's own allegations identify other Meta employees as the people who purportedly executed the downloading, while Mr. Zuckerberg's sole alleged involvement was receiving an internal "escalation" of unspecified content. Every claim against Mr. Zuckerberg should be dismissed with prejudice.

## II. BACKGROUND

The Complaint alleges that Meta explored licensing copyrighted works in sourcing training data for its generative artificial intelligence platform, "Llama," but then abandoned those licensing efforts. Compl. ¶¶ 49–50. Instead, the Complaint alleges, Meta subsequently downloaded copyrighted books and articles from online repositories—including Library Genesis ("LibGen"), Anna's Archive, and Z-Library—through BitTorrent and similar mechanisms, and used those works to train its Llama AI models. *Id*. ¶¶ 4–9.

Plaintiffs identify specific Meta employees who allegedly "conceived, directed, authorized, and executed" the alleged copyright infringement scheme—including Defendant Lample, a research scientist who allegedly downloaded Meta's first copy of LibGen, and Defendant Pineau, Meta's Vice President of AI Research who allegedly oversaw the development of Llama. *Id*. ¶¶ 8, 32–33. The Complaint also identifies several other Meta engineers and executives—including Ahmad Al-Dahle (Vice President and Head of AI), Xiaolan Wang, Nikolay Bashlykov, and Todor Mihaylov—who allegedly carried out the downloading at issue. *Id*. ¶¶ 68, 73, 75–76.

As to Mr. Zuckerberg specifically, the Complaint alleges that when Meta engineers experienced "difficulties in sourcing sufficient training material," Mr. Zuckerberg "'demanded a solution'" (*id*. ¶ 25); that "the decision to torrent copyrighted works was made only '[a]fter a prior escalation to MZ'" (*id*.); that "[t]he directive to stop licensing was 'escalated to MZ re: fair use'" (*id*. ¶ 109); that "after a prior escalation to MZ [Mark Zuckerberg], GenAI has been approved to use LibGen for Llama 3" (*id*. ¶ 68); and that "Zuckerberg and other Meta executives authorized and directed the torrenting of over 267 TB of pirated material." *Id*. ¶ 72.

Notably absent from these allegations is any specific act by Mr. Zuckerberg himself. The Complaint does not identify a single communication authored by Mr. Zuckerberg, a single meeting at which he gave operative direction, or a single decision in which he specified the use of any particular source or method.

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of claims against a defendant when the court lacks personal jurisdiction. Plaintiffs bear the burden of establishing jurisdiction through "legally sufficient allegations," including "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotations omitted). Conclusory statements will not do. *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). The jurisdiction inquiry proceeds in two steps: first, the Court considers whether personal jurisdiction exists under New York's long-arm statute, and second, whether exercising jurisdiction satisfies due process. *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, *Nicosia v. Amazon.com Inc.*, 834 F.3d 220, 230 (2d Cir. 2016), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Mr. Zuckerberg Is Not Subject to Personal Jurisdiction.

Plaintiffs' Complaint should be dismissed with respect to Mr. Zuckerberg pursuant to Fed. R. Civ. P. 12(b)(2) because Plaintiffs fail to establish that the Court has either general or specific jurisdiction over Mr. Zuckerberg, or that the exercise of personal jurisdiction comports with due process. *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 430 (S.D.N.Y. 2019); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

#### 1. Mr. Zuckerberg Is Not Subject to General Jurisdiction.

Mr. Zuckerberg is not domiciled in New York. That ends the general jurisdiction inquiry. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) ("A person has only one domicile at any given moment[.]"); *Ditkoff v. Wolff*, 2025 WL 919635, at *5 (S.D.N.Y. Mar. 26, 2025) (noting that "the Second Circuit has yet to find" an "exceptional case" supporting general jurisdiction outside of a defendant's domicile (internal quotations and citations omitted)).

The Complaint itself alleges that Mr. Zuckerberg's offices are in Menlo Park, California, and that he resides in Palo Alto, California. Compl. ¶ 31. It pleads no New York residence, no New York office, and no systematic or continuous contact with New York in his personal capacity. General jurisdiction is therefore absent.

2. Mr. Zuckerberg Is Not Subject to Specific Jurisdiction.

Specific jurisdiction under CPLR § 302(a) requires that the causes of action arise from one of four enumerated contacts with New York. *Thackurdeen*, 130 F. Supp. 3d at 801. The Complaint invokes only §§ 302(a)(1) and 302(a)(3). Compl. ¶ 25. Neither is satisfied.

a. *Section 302(a)(1) Does Not Reach Mr. Zuckerberg.*

Section 302(a)(1) requires that the defendant "transact[] any business" in New York and that the cause of action "aris[es] from" that transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotations omitted). The plaintiff must provide factual support—not "conclusory statements or allegations." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010). Allegations that a defendant "participated in, supervised, ratified, or tacitly approved various activities" are "legal conclusions" insufficient to establish jurisdiction. *Adamou v. Cnty. of Spotsylvania, Virginia,* 2016 WL 1064608, at *10 (S.D.N.Y. Mar. 14, 2016) (internal quotations omitted).

The Complaint's central jurisdictional allegation—that Mr. Zuckerberg "directed and exercised control over Meta's New York-directed activities giving rise to Plaintiffs' claims" (Compl. ¶ 25)—is precisely the kind of legal conclusion *Adamou* held insufficient. It identifies no personal conduct Mr. Zuckerberg directed at New York, as distinct from a corporate strategy he set from California. The Complaint's most specific New York allegation—that "[a]t Zuckerberg's direction, Meta employees in New York and elsewhere carried out mass theft" (*id.*)—fares no

better, for it identifies no employees, no specific direction, and no timeframe—the same conclusory framing *Adamou* rejected. 2016 WL 1064608, at *10.

The Complaint's broader characterizations do not cure this defect. Calling Mr. Zuckerberg the "guiding hand" and a "primary actor" (Compl. ¶ 31), or alleging that he "personally authorized and actively encouraged the mass download and infringement" (*id.* ¶ 6), describes his role in the same generalized terms *Adamou* found wanting—without identifying any personal conduct he directed at New York.

Nor would any agency theory aid Plaintiffs. Jurisdiction over Meta does not automatically extend to its CEO. *See Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008). An officer "may be subject to specific personal jurisdiction … based on his actions in his corporate capacity only where the plaintiff can show that the corporation was acting as the agent of the officer (rather than vice versa, as would usually be the case)." *Id*. Under *Kreutter v. McFadden Oil Corp,* 71 N.Y. 2d 460 (1988) and its progeny, the plaintiff must show: (1) "that the corporation engaged in purposeful activities in New York in relation to the transaction;" (2) that those "activities were performed for the benefit of the individual defendant;" (3) with the individual's knowledge and consent; and (4) that the individual "exercised some control over the corporation." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006). The Complaint fails to meet these requirements.

*Benefit.* Every allegation ties the purported infringement to Meta's corporate interest in developing Llama (Compl. ¶¶ 2, 25, 68)—not to any benefit personal to Mr. Zuckerberg. As in *Ontel Prods., Inc. v. Project Strategies Corp.*, "there is every indication that whatever activities [Mr. Zuckerberg] may have personally taken were to further [Meta's] business." 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995). The Complaint's allegations regarding Mr. Zuckerberg's increased net

worth and Meta's rising share price (Compl. ¶ 110) do not bridge this gap. Courts have found the benefit prong satisfied where the officer holds a controlling or dominant equity stake in a closely held corporation—not where, as here, the defendant is CEO of a large, publicly traded company and the alleged benefit is the derivative return a shareholder-executive receives. *See Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013) (benefit prong of *Kreutter* met where defendant was "one hundred percent shareholder" of closely held corporation); *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 326 n.6 (S.D.N.Y. 1998) ("[C]ases finding the benefit prong of *Kreutter* to be satisfied typically have involved claims against the controlling shareholders of closely held corporations."). Meta is neither closely held nor controlled by Mr. Zuckerberg in the sense those cases require.[1]

*Knowledge, consent, and control.* A corporate officer's title alone does not confer jurisdiction; the plaintiff must allege *facts* demonstrating that the officer was a "primary actor" in the specific transaction, with personal conduct directed at the forum. *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (applying *Kreutter*, 71 N.Y. 2d at 470). The plaintiff must "rely on facts establishing that the corporate officer was the driving force behind the New York transactions." *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 198 (E.D.N.Y. 2018) (internal quotations omitted). Vague characterizations—like the allegation that Mr. Zuckerberg "directed and exercised control over Meta's New York-directed activities" (Compl. ¶ 25)—do not suffice. *See Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 309

---

[1] Although the Complaint describes Mr. Zuckerberg as a "controlling shareholder" (Compl. ¶ 31), functional corporate control does not transform every Meta act into a personal act for jurisdictional purposes—otherwise, every controlling shareholder of every public company would be personally amenable to suit wherever the company operates. That can't be the law. The relevant question under *Kreutter* is whether the infringing activity was performed for Mr. Zuckerberg's personal benefit—not whether he had the power to direct Meta's affairs generally. Generalized appreciation in the stock of a publicly traded company with millions of shareholders from its overall business performance is categorically different from the personal enrichment of a controlling owner who siphons profits from a closely held entity. *See Karabu Corp.*, 16 F. Supp. 2d at 326 n.6.

(S.D.N.Y. 2015) (vague allegations that a corporate president was the "architect" of alleged misconduct are insufficient); *Adamou*, 2016 WL 1064608, at *10 (allegations of "participat[ing] in, supervis[ing], ratif[ying], or tacitly approv[ing]" are "legal conclusions" insufficient for jurisdiction (internal quotations omitted)). Plaintiffs cannot meet their burden simply by pairing Mr. Zuckerberg's title with phrases like "primary actor" and "guiding hand," (Compl. ¶ 31) without alleging any facts to support them.

The remaining allegations—that Mr. Zuckerberg "'demanded a solution'" (*id.* ¶¶ 25, 108), that the LibGen decision was "escalated to MZ" (*id.* ¶¶ 50, 109), and that he "authorized and directed" torrenting alongside "other Meta executives" (*id.* ¶ 72)—describe corporate-level approvals from California, not personal transactions in New York. A corporate strategic decision made from California—even one later implemented by New York-based employees—does not transform the corporation into the officer's agent for jurisdictional purposes. *See, e.g., Wolo Mfg. Corp.*, 349 F. Supp. 3d at 195–96; *Blockchain Luxembourg S.A. v. Paymium, SAS*, 2019 WL 4199902, at *12 (S.D.N.Y. Aug. 7, 2019). If a CEO's own email to a plaintiff about a dispute was insufficient to establish primary actor status in *Group. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 336–39 (E.D.N.Y. 2021), then *a fortiori* the Complaint's thirdhand account of an internal escalation cannot do so here.

b. *Section 302(a)(3) Does Not Reach Mr. Zuckerberg.*

Section 302(a)(3)(ii) reaches a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state," provided the defendant "expects or should reasonably expect the act to have consequences in the state" and "derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). The Complaint does not establish that any injury to Plaintiffs occurred in New York. Neither named Plaintiff

resides in New York: Plaintiff Hobbs resides in California (Compl. ¶ 28), and Plaintiff Stone resides in Connecticut (*id.* ¶ 29).

The Complaint alleges that New York is the "epicenter" (*id.* ¶ 21) of the publishing industry and that "many authors, agents, and publishing professionals maintain a regular presence here" (*id.* ¶ 23), but these are generalizations about the industry, not allegations of a New York-specific injury suffered by these Plaintiffs. Courts have held that such allegations are insufficient. *See Creative Photographers, Inc. v. Grupo Televisa, S.A.B.,* 763 F. Supp. 3d 618, 636–37 (S.D.N.Y. 2025) (holding that plaintiff must "allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights" and that lost licensing revenue is insufficient) (internal quotations omitted). Because the Complaint does not plead a non-speculative, direct injury in New York—as opposed to generalized harm felt wherever these non-New York Plaintiffs happen to reside—it fails to satisfy the injury element of § 302(a)(3)(ii) as to Mr. Zuckerberg. Under Plaintiffs' theory, any alleged copyright infringer—no matter where located—would be subject to jurisdiction in New York simply because the publishing industry is based here. That is not the law.

**B. Exercising Jurisdiction Over Mr. Zuckerberg Would Violate Due Process.**

Even if the long-arm statute were satisfied—which it is not—the exercise of jurisdiction must comport with due process, which requires that "it is the defendant's conduct that must form the necessary connection with the forum State"—not the plaintiff's activities or a third party's contacts. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Mr. Zuckerberg's only alleged connection to New York is his purported direction of Meta's corporate strategy from California. Haling him into this forum would impermissibly rely on his connection to Meta—a third party—rather than his own purposeful contacts. *See Walden*, 571 U.S.

at 286. For the same reasons the long-arm statute is unsatisfied, due process would be violated by exercising jurisdiction over Mr. Zuckerberg based on alleged internal corporate approvals made three thousand miles from this courthouse.

### C. The Complaint Fails to State a Claim for Direct Copyright Infringement Against Mr. Zuckerberg (Counts I and II).

To establish a claim of copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (internal quotations omitted). The second element requires that the defendant engaged in "'volitional conduct' that 'causes' the copying or distribution"—in other words, "direct liability attaches only to 'the person who actually presses the button.'" *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (quoting *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) ("*Cablevision*"); *see also Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074 (9th Cir. 2023) (noting every circuit to address the issue has adopted a volitional-conduct requirement). The requirement demands "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner." *Cablevision*, 536 F.3d at 130 (internal quotations omitted). Because courts in the Second Circuit have applied this requirement to both reproduction and distribution rights, *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009); *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115 (S.D.N.Y. 2015), Counts I (Reproduction) and II (Distribution) are analyzed together below.

The Complaint does not allege that Mr. Zuckerberg personally reproduced or distributed any copyrighted work. To the contrary, its own factual allegations defeat any such inference.

1. The Complaint identifies other individuals as the actual infringers.

Indeed, the Complaint identifies the purported actual infringers: Guillaume Lample "'likely torrented Meta's first copy of' LibGen'" (Compl. ¶ 33), and Nikolay Bashlykov "elected to torrent the entirety of LibGen's SciMag section," admitting he "'had to fallback to torrenting since the volume was too large.'" *Id.* ¶ 76. Not a single paragraph alleges that Mr. Zuckerberg personally downloaded a dataset, operated a BitTorrent client, or transmitted any file.

The distinction is well illustrated by *UMG Recording, Inc. v. Escape Media Grp., Inc.*, 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014). In that case, two corporate founders were held liable as direct infringers because they had *personally uploaded* copyrighted sound recordings to the service. *Id.* at *25–26. By contrast, Mr. Zuckerberg is not alleged to have personally uploaded, downloaded, or copied any copyrighted work.

2. The Complaint's factual allegations describe corporate direction, not personal infringement.

Counts I and II repeatedly lump Mr. Zuckerberg together with Meta as "Defendants" without distinguishing his conduct from the corporation's. *See, e.g.*, Compl. ¶¶ 4, 8. The factual allegations overwhelmingly describe acts by Meta employees, Meta systems, and Meta products—not Mr. Zuckerberg personally. Where the Complaint does single out Mr. Zuckerberg, it alleges that he "personally authorized and actively encouraged the mass download and infringement" (*id.* ¶ 6), "authorized and directed the torrenting of over 267 TB of pirated material" (*id.* ¶ 72), and "'demanded a solution'" to a training-data shortage. *Id.* ¶ 25. The Complaint likewise alleges that "[a]t Zuckerberg's direction, Meta employees in New York and elsewhere carried out mass theft of copyrighted works." *Id.* Every one of these allegations describes what Mr. Zuckerberg purportedly told *others* to do—not what he himself did.

3. The Complaint's most detailed allegation as to Mr. Zuckerberg actually undercuts Plaintiffs' theory.

The Complaint states that "'after a prior escalation to MZ, GenAI has been approved to use LibGen for Llama 3,'" describing LibGen as "'a dataset we know to be pirated.'" Compl. ¶ 68. But three features of this allegation are fatal to Plaintiffs' claims against Mr. Zuckerberg.

First, the passive voice. The phrase "'has been approved'" does not allege that Mr. Zuckerberg approved anything. It alleges only that something was escalated to his level and that a decision was subsequently made—by someone. That someone, according to the same paragraph, was Mr. Al-Dahle, who the Complaint says "'cleared the path'" for using LibGen. *Id*.

Second, the collective "we." The phrase "a dataset *we* know to be pirated" attributes knowledge to Meta employees generally—not to Mr. Zuckerberg specifically. The Complaint never alleges that whatever was "escalated to MZ" (*id.* ¶¶ 50, 109) included information about LibGen, or the supposed unlicensed nature of the dataset, or that Mr. Zuckerberg understood the legal character of LibGen.

Third, temporal sequence is not causation. Paragraphs 108 and 109 allege that Mr. Zuckerberg "'demanded a solution'" to a training-data shortage and that the decision to torrent was made "'*after* a prior escalation to MZ.'" *Id.* ¶¶ 108–109. But "after" does not mean "because of"—and "'demand[ing] a solution'" to a business problem is not the same as directing employees to download a specific source with knowledge of its alleged illegal character.

The Complaint does not allege: (a) that the "escalation" informed Mr. Zuckerberg that LibGen contained unlicensed material; (b) that Mr. Zuckerberg understood the legal character of the data source; (c) that Mr. Zuckerberg personally decided to use LibGen (or other platforms), as opposed to approving a general data-acquisition strategy that others implemented; (d) that Mr. Zuckerberg selected the torrenting protocol or understood its default settings; or (e) any

specific communication from Mr. Zuckerberg directing the use of unlicensed material. These omissions are not mere pleading gaps—they reflect the Complaint's own narrative, in which Mr. Zuckerberg's involvement was limited to receiving an "escalation" of unspecified content.

Receiving an escalation is not the same as personally downloading, copying, or distributing copyrighted works. The Second Circuit drew precisely this line in *ABKCO Music*, reversing a direct-infringement finding against a corporate principal. In that case, the corporate principal instructed his CTO as to "which concerts to make available for download"—a directive arguably more specific than the unspecified "escalation" to Mr. Zuckerberg—and nonetheless the court held it was "only instructions and plans," not evidence that he "'actually presse[d] the button'" and thus insufficient for direct liability. *ABKCO Music*, 50 F.4th at 322 (quoting *Cablevision*, 536 F.3d at 131).

4. <u>The Complaint's conclusory labels cannot substitute for factual allegations.</u>

The characterizations of Mr. Zuckerberg as "not a passive corporate officer, but a primary actor" with "direct participation in the infringing conduct" (Compl. ¶ 31) and as one who "personally authorized, directed, and was a primary actor in Meta's widespread infringing acts" (*id*. ¶ 108) are precisely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that *Iqbal* holds "do not suffice." 556 U.S. at 678.

And the allegation that Mr. Zuckerberg was "the guiding hand behind" Llama's development (Compl. ¶ 31) is a generic description of corporate leadership—not personal participation in infringement. A corporate principal's supervisory role does not, without more, establish the volitional conduct required for direct liability. *See ABKCO Music*, 50 F.4th at 322.

Because the Complaint does not allege that Mr. Zuckerberg personally downloaded, copied, or distributed any copyrighted work—and because its allegations, at their strongest,

describe the same type of "instructions and plans" the Second Circuit held insufficient in *ABKCO Music*, 50 F.4th at 322—Counts I and II should be dismissed as to him.

### D. Plaintiffs Do Not Plausibly Allege Contributory Infringement by Mr. Zuckerberg (Count III).

Contributory infringement requires that the defendant "with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another." *White v. DistroKid*, 738 F. Supp. 3d 387, 403 (S.D.N.Y. 2024); *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117–18 (2d Cir. 2010). The plaintiff must allege that the defendant "knew of, and substantially participated in, the alleged direct infringement." *Brought to Life Music, Inc. v. MCA Recs., Inc.*, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003). The participation must not be merely supervisory, *Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 436 (S.D.N.Y. 2010)—and must reflect "personal conduct that encourages or assists the infringement." *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998). The Complaint satisfies neither element.

1. <u>The Complaint Does Not Plausibly Allege Inducement Under *Cox*.</u>

"[M]ere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Cox Commc'ns, Inc. v. Sony Music Entm't.,* 146 S. Ct. 959, 968 (2026). Rather, the plaintiff must show that the defendant induced infringement by "actively encourag[ing] infringement through specific acts" or that the service was "tailored to infringement." *Id*. at 967.

The Complaint's allegations as to Mr. Zuckerberg—stripped of their conclusory labels—describe nothing more than a corporate governance process in which others allegedly made and implemented operational decisions, not "specific acts" directed at promoting infringement. *Id.* Under *Cox*, these accusations are not enough to find liability.

As discussed in Section C(3) above, Paragraph 68's passive-voice construction does not allege that Mr. Zuckerberg personally approved the use of LibGen or knew of its alleged unlicensed

character. Moreover, the Complaint does not allege what information the "escalation" conveyed to Mr. Zuckerberg, identifies Mr. Al-Dahle—not Mr. Zuckerberg—as the person who "'cleared the path,'" and uses the collective "we" to attribute knowledge to Meta generally. Compl. ¶ 68. Under *Cox*, receiving an unspecified corporate escalation is not a "specific act[]" directed at "encourag[ing] infringement." 146 S. Ct. at 967.

2. <u>The Complaint Does Not Plausibly Allege Material Contribution.</u>

Nor does the Complaint allege that Mr. Zuckerberg materially contributed to the purported infringing conduct. The Complaint makes clear that it was Mr. Lample and Mr. Bashlykov who allegedly executed the downloading, not Mr. Zuckerberg. Compl. ¶¶ 33, 76. At each step, Mr. Zuckerberg is alleged to have been the executive who received an escalation that others purportedly acted upon—not a participant in the infringing conduct itself. *See Forties B LLC*, 725 F. Supp. 2d at 436 (dismissing contributory infringement claim against corporate officer whose involvement was limited to a "supervisory role in the decision to broadcast" infringing content, holding that contributory liability "require[s] a degree of personal involvement that significantly surpasses" supervisory oversight).

As discussed above, the Complaint attributes no personal downloading, copying, or operative direction to Mr. Zuckerberg—only conclusory characterizations of him as a "primary actor" (Compl. ¶ 31) that do not suffice under *Iqbal*, 556 U.S. at 678.

The closest Second Circuit precedent confirms this conclusion. In *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016), the court affirmed contributory liability against a CEO who personally directed an employee to circulate a list of sites featuring free MP3s for sideloading purposes, at least one of which was recognized as containing pirated music, personally encouraged employees to sideload from them, personally used the service to download

songs, and personally edited the platform's FAQ to assure users the downloads were "legal." *Id*. at 87, 94, 96, 98–100. Critically, the CEO knew that major labels had not authorized distribution of their music in MP3 format yet continued to promote sideloading with that knowledge. *Id*. at 92. Here, the most specific allegation is that a corporate question was "escalated to MZ"—with no allegation of what information that escalation conveyed or what Mr. Zuckerberg did, if anything, in response. The gap is dispositive. Nor can corporate officer status alone supply the missing personal involvement. *See Softel, Inc. v. Dragon Med & Sci. Commc'ns, Inc.,* 118 F.3d 955, 971 (2d Cir. 1997); *Stanacard, LLC v. Rubard, LLC,* 2016 WL 462508, at *14 (S.D.N.Y. Feb. 3, 2016); *Michael Grecco Prods., v. Valuewalk, LLC,* 345 F. Supp. 3d 482, 513 (S.D.N.Y. 2018).

For these reasons, Count III should be dismissed as to Mr. Zuckerberg.

### E. The DMCA Claim (Count IV) Should Be Dismissed As To Mr. Zuckerberg.

Section 1202(b) of the Digital Millennium Copyright Act ("DMCA") imposes a "double-scienter requirement": the defendant must have acted intentionally (for removal claims) or with actual knowledge that Copyright Management Information ("CMI") was removed without authority (for distribution claims), and must have known or had reasonable grounds to know that its conduct "will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b); *see Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020). Conclusory scienter allegations do not suffice. *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016).

The Complaint fails that standard as to Mr. Zuckerberg. Although the damages paragraph generically references "Defendants' removal of CMI" (Compl. ¶ 165), every operative allegation identifies only *Meta* as the actor—*Meta* "developed scripts to strip copyright notices" (*id*. ¶ 161), *Meta* "intentionally and systematically removed CMI" (*id*. ¶ 163), and *Meta* distributed derivative works without CMI. *Id*. ¶ 164. Moreover, the Complaint identifies Meta employee Nikolay Bashlykov—not Mr. Zuckerberg—as the person who allegedly "created scripts to remove

'copyright information, including data publication, author, ISBN numbers, disclaimers about not selling, sharing or giving away because it is an infringement.'" *Id*. ¶ 83. There is no allegation that Mr. Zuckerberg personally removed or altered CMI, directed the creation of the scripts, or knew of the technical process by which CMI was stripped. That omission is fatal. *See Chevrestt*, 204 F. Supp. at 632 (dismissing § 1202(b) claim where plaintiff alleged scienter without factual support). A boilerplate reference to "Defendants" cannot substitute for element-by-element pleading against Mr. Zuckerberg individually.

Nor does the Complaint's conclusory assertion that Mr. Zuckerberg "personally authorized, directed, and was a primary actor in Meta's widespread infringing acts" (Compl. ¶ 108) supply the CMI-specific scienter that § 1202(b) demands. The underlying factual allegations—that Mr. Zuckerberg "demanded a solution" to a training-data shortage (*id.*) and that data-acquisition decisions were "escalated to MZ" (*id.* ¶ 109)—relate to Meta's *data-acquisition strategy*, not to the *technical process* by which CMI was stripped.

Even if the Complaint could be read to allege Mr. Zuckerberg's awareness of LibGen as a data source (which it does not), awareness of a data source is categorically different from knowledge that scripts were being developed to strip CMI. The Complaint identifies Mr. Bashlykov as the employee who created CMI-stripping scripts (Compl. ¶ 83) and identifies no link between the "escalation to MZ" and the technical CMI-removal process. That inferential leap is precisely what *Mango*'s double-scienter requirement forecloses. Indeed, even direct participation in CMI removal does not satisfy the statute absent the second scienter prong. *See McGucken v. Shutterstock, Inc.*, 166 F.4th 361, 369–370 (2d Cir. 2026) (affirming summary judgment on § 1202(b) claim even where defendant admittedly removed metadata from every image, because no evidence defendant knew removal would facilitate infringement); *see also Krechmer v. Tantaros*,

747 F. App'x 6, 9–10 (2d Cir. 2018) (affirming dismissal of § 1202(a) claim where complaint failed to "set forth any factual basis" for the double-scienter requirement).

Section 1202(b) demands knowledge of the specific act of CMI removal *and* knowledge that such removal would facilitate infringement. The Complaint alleges neither as to Mr. Zuckerberg.

**F. The New York Common-Law Claims (Counts V–VII) are Preempted and Independently Fail.**

The Copyright Act preempts a state-law claim where (1) the work falls within the subject matter of copyright, and (2) the right asserted is equivalent to one of the exclusive rights under 17 U.S.C. § 106. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305–06 (2d Cir. 2004). A state-law claim escapes preemption if it contains an "extra element" that makes the cause of action *qualitatively different* from a copyright infringement claim. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716–17 (2d Cir. 1992); *accord Briarpatch Ltd., L.P.,* 373 F.3d at 305–06. The Second Circuit takes a "restrictive view" of what qualifies as qualitatively different: elements such as "awareness or intent," *Briarpatch Ltd., L.P.,* 373 F.3d at 306, that merely "alter the action's scope but not its nature" do not suffice. *Altai*, 982 F.2d at 717 (internal quotations omitted). Each of Plaintiffs' common-law claims—unfair competition (Count V), conversion (Count VI), and unjust enrichment (Count VII)—rests on the same allegation of unauthorized copying underlying Counts I and II, targets works within the subject matter of copyright, and asserts rights equivalent to those under § 106. All three are preempted. Each also fails independently as to Mr. Zuckerberg.

1. Unfair Competition (Count V)

Count V is preempted because it adds nothing beyond what copyright already protects, and it independently fails because no allegation ties Mr. Zuckerberg to any act of misappropriation. New York common-law unfair competition by misappropriation requires that the defendant

"misappropriated the plaintiff['s] labors, skills, expenditures, or good will" and "displayed some element of bad faith in doing so." *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 208–209 (S.D.N.Y. 2014) (internal citations and quotations omitted); *see also Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 760–61 (S.D.N.Y. 2021). But unfair competition claims "grounded solely in the copying of a plaintiff's protected expression are preempted." *Altai*, 982 F.2d at 717. Bad faith alone does not supply the extra element. *Genius Media Grp. Inc. v. Google LLC*, 2020 WL 5553639, at *15 (E.D.N.Y. Aug. 10, 2020), *aff'd sub nom*. *ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744 (2d Cir. Mar. 10, 2022). The Second Circuit has rejected any "exception to the general rule of preemption in the misappropriation area … for claims involving any form of commercial immorality," observing that such concepts "are virtually synonymous [with] wrongful copying." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) (internal quotations and citations omitted); *see also Wolo Mfg. Corp*, 349 F. Supp. 3d at 213 (E.D.N.Y. 2018) (dismissing unfair competition claim "in [its] entirety with prejudice as preempted by the Copyright Act").

Count V's core allegation—"exploiting pirated literary works to accelerate development of Meta's AI products while avoiding the costs and restrictions associated with lawful licensing" (Compl. ¶ 168)—is indistinguishable from the conduct underlying Counts I and II. It is preempted. Turning to individual liability: the count identifies no specific labor or expenditure that *Mr. Zuckerberg*—as distinct from Meta—allegedly misappropriated, nor any bad-faith conduct allegedly attributable to him personally. *See Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 198–99 (2d Cir. 2001) (affirming dismissal where plaintiff failed to identify any proprietary interest misappropriated by defendant or any evidence of bad faith).

2. Conversion (Count VI)

Count VI fares no better. It alleges dominion over intangible works—a theory that is both preempted and doctrinally untenable under New York law. Conversion requires "the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985). Merely copying a work "for a short time" and "returning it undamaged" is "far too insubstantial" an interference to constitute conversion. *Id.* Separately, New York does not generally recognize conversion of intangible property. *Austin v. Gould*, 168 A.D.3d 626, 627 (1st Dep't 2019) ("[T]he conversion of intangible property is not actionable." (internal quotations omitted)). Moreover, a conversion claim premised on the use or reproduction of copyrighted material—rather than wrongful possession of physical property—is preempted. *Stanacard, LLC v. Rubard, LLC*, 2016 WL 462508, at *21 (S.D.N.Y. Feb. 3, 2016).

Count VI is preempted as it alleges that "Defendants intentionally exercised unauthorized dominion and control" over Plaintiffs' copyrighted works by copying and exploiting them. Compl. ¶¶ 172–174; *see New London Assocs. LLC v. Kinetic Social LLC*, 384 F. Supp. 3d 392, 411 (S.D.N.Y. 2019). Further, those allegations target the intangible copyright interest—not any tangible object of which Plaintiffs were dispossessed—and do not allege the "complete exclusion of the rightful possessor" that *Harper & Row* requires. 723 F.2d at 201. Plaintiffs still possess their own copies; they allege only that Defendants made unauthorized additional ones. As to individual liability, the same gap recurs: the Complaint identifies no act of dominion or control exercised by Mr. Zuckerberg personally, as distinct from Meta, over any property belonging to Plaintiffs. Count VI should be dismissed as to Mr. Zuckerberg on both grounds.

3. Unjust Enrichment (Count VII)

Count VII fails for the same reasons. Unjust enrichment based on copying within the scope of the Copyright Act is preempted. The Second Circuit has squarely so held: "While enrichment is not required for copyright infringement, we do not believe that it goes far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim. Like the elements of awareness or intent, the enrichment element here limits the scope of the claim but leaves its fundamental nature unaltered." *Briarpatch*, 373 F.3d at 306; *see also Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 476–77 (S.D.N.Y. 2002); *In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *4 (S.D.N.Y. Dec. 15, 2025) (dismissing unjust enrichment claim as preempted because "[t]he fundamental nature of this claim is equivalent to a claim to enforce exclusive rights within the general scope of copyright"). Moreover, "unjust enrichment is not a catchall cause of action to be used when others fail"; it requires an equitable obligation arising from a relationship between the parties, and is unavailable where it duplicates a tort claim already pleaded. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).

Count VII alleges that "Defendants obtained substantial benefits through unauthorized copying, use and distribution" and thereby "avoided substantial licensing costs." Compl. ¶¶ 177–178. That is the same theory underlying Counts I and II, and it is preempted. The individual-liability deficiency is even more glaring here. The only benefit-specific allegation as to Mr. Zuckerberg is his generalized shareholder appreciation (*id.* ¶ 110)— but such an indirect benefit is insufficient to support unjust enrichment, which requires a "specific and direct benefit" to the defendant. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (reversing unjust enrichment verdict where evidence showed only an indirect benefit to defendant rather than a specific and direct one). The Complaint alleges no direct benefit conferred on Mr. Zuckerberg.

All three common-law claims should be dismissed as to Mr. Zuckerberg—on preemption grounds, on individual-liability grounds, or both.

## V. CONCLUSION

For the foregoing reasons, the Complaint fails to establish personal jurisdiction over Mr. Zuckerberg and fails to state a claim against him on every cause of action. The Complaint does not allege that Mr. Zuckerberg personally downloaded, copied, or distributed any copyrighted work; personally removed copyright management information; personally directed any conduct at New York; or personally induced any person to infringe. What the Complaint alleges—and all it alleges—is that a corporate CEO received internal escalations and set corporate strategy. That is not a basis for personal jurisdiction. It is not a basis for direct or contributory infringement liability. It is not a basis for DMCA liability. And it is not a basis for state common-law claims that are, in any event, preempted. All claims against Mr. Zuckerberg should be dismissed with prejudice.

Dated: August 26, 2026

Respectfully submitted,

By: __/s/ Justin V. Shur

JUSTIN V. SHUR
Liu Shur Kravis LLP
607 Fourteenth Street, N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100
justin.shur@lskllp.com

*Counsel for Defendant*
MARK ZUCKERBERG

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I certify that on August 26, 2026, I caused the foregoing document to be filed with this Court's CM/ECF system, which I understand caused service on all registered parties. I further certify that this memorandum of law complies with Local Civil Rule 7.1's 8,750-word limit because Microsoft Word calculates that it contains 6,400 words, excluding the caption, table of contents, table of authorities, and signature blocks.

Dated: August 26, 2026

/s/ Justin V. Shur

Justin V. Shur